United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HEATHER W.,
Plaintiff,
v.
SSA COMMISSIONER,
Defendant.

Case No. 25-cv-06726-SI

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 16, 18

The parties have filed cross-motions for summary judgment in this Social Security appeal. Dkt. Nos. 16, 18. Having considered the parties' papers and the Administrative Record ("AR"), the Court GRANTS IN PART plaintiff's motion for summary judgment and DENIES defendant's cross-motion for summary judgment. The Court REMANDS this action for further administrative proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

On December 21, 2022, plaintiff Heather W. protectively filed an application for Social Security Disability Income ("SSDI") under Title II of the Social Security Act and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. AR 33 (ALJ Decision). Plaintiff alleged disability beginning January 17, 2022. *Id.* Her application was denied initially and upon reconsideration. *Id.* Plaintiff then filed a written request for a hearing, which took place on June 17, 2024. *Id.* Plaintiff was represented by counsel at the hearing. *Id.* Plaintiff testified, as did vocational expert Lynda Berkley. *Id.*

On September 9, 2024, Administrative Law Judge ("ALJ") K. Kwon issued an unfavorable decision finding plaintiff not disabled within the meaning of the Social Security Act. AR 46. In

determining plaintiff's disability status, the ALJ applied the five-step analysis in accordance with 20 C.F.R. § 404.1520(a) and § 416.920(a). At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since plaintiff's alleged onset date. AR 36. At step two, the ALJ found plaintiff suffered severe impairments of: hypertrophic obstructive cardiomyopathy; hypertension; non-sustained ventricular tachycardia; asthma; morbid obesity; and depression. *Id.* At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ specifically considered listings: 3.03 (Asthma); 4.02 (Chronic heart failure while on a regimen of prescribed treatment); 12.04 (Depressive, bipolar and related disorders); and SSR 19-2p (obesity). AR 36-39.

The ALJ determined that plaintiff has the residual functional capacity to perform "less than the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)." AR 39. The ALJ continued,

> Specifically, the claimant can occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds. She can sit for six hours total in an eight-hour workday and stand and/or walk for six hours total in an eight-hour workday. Further, the claimant can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but should never climb ladders, ropes, or scaffolding. She should not work with hazards, such as at heights or with heavy or hazardous machinery. Additionally, the claimant should not be exposed to concentrated levels of environmental irritants. Finally, she can have a maximum of occasional interaction with the general public.

*Id.*

At step four, the ALJ found plaintiff could not perform her past relevant work as a teacher aide. AR 44.

At step five, after considering plaintiff's age, education, work experience, and RFC, and taking into account the hearing testimony of the vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform, including mail clerk, merchandise marker, housekeeping cleaner, document preparer, escort vehicle driver, and addresser. AR 45. Accordingly, the ALJ concluded plaintiff was not disabled under the Social Security Act. AR 46.

The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. AR 1-3. Plaintiff then filed this action for judicial review under 42 U.S.C. § 405(g). Dkt. No. 1.

**ISSUES FOR REVIEW**

1. Did the ALJ err in rejecting Plaintiff's symptom testimony?

2. Did the ALJ err in evaluating the opinion of examining psychologist Mark Bender, Ph.D.?

3. Did the ALJ err in evaluating the opinion of State agency psychological consultant Celine Payne-Gair, Ph.D.?

**STANDARD OF REVIEW**

The Social Security Act authorizes an Article III court to review final decisions of the Commissioner. 42 U.S.C. § 405(g). This Court may enter a judgment affirming, modifying or reversing the decision of the Commissioner, with or without remanding the case for a rehearing. *Id.* Factual findings of the Commissioner are conclusive if supported by substantial evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). The Court may set aside the Commissioner's final decision when that decision is based on legal error or where the findings of fact are not supported by substantial evidence in the record taken as a whole. *Tackett v. Apfel,* 180 F.3d 1094, 1097-98 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Id.* at 1098. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (internal quotation marks omitted). To determine whether substantial evidence exists, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Commissioner's conclusion. *Tackett*, 180 F.3d at 1098. "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**DISCUSSION**

Plaintiff contends that the ALJ erred (1) in failing to provide clear and convincing reasons for rejecting plaintiff's symptom testimony and (2) in evaluating the medical opinions of Dr. Bender and Dr. Payne-Gair. Dkt No. 16 ("Pl.'s Mot."). Plaintiff asks that the ALJ's decision be vacated and this case remanded for further administrative proceedings. Defendant contends the ALJ properly weighed the evidence and that substantial evidence supports the ALJ's decision. Dkt. No. 18 ("Def.'s Mot.").

**I. Plaintiff's Symptom Testimony**

**A. Legal Standard**

The Ninth Circuit follows a two-step test for deciding what weight to give to a plaintiff's symptom testimony. At step one, the ALJ must ascertain whether the plaintiff has presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). If the plaintiff satisfies step one, and there is no evidence of malingering, then at step two, the ALJ can reject the plaintiff's testimony about the severity of her symptoms only by providing specific, clear, and convincing reasons for doing so. *Id.* If the ALJ finds that the plaintiff's testimony regarding the severity of her symptoms is not credible, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). This clear and convincing standard is the most demanding standard required in Social Security cases. *Trevizo*, 871 F.3d at 678.

**B. ALJ's Findings**

At step three of the five-step disability inquiry, when evaluating whether plaintiff had met the "paragraph B" criteria for Listing 12.04 (depressive, bipolar and related disorders), the ALJ repeatedly cited to statements plaintiff made to Dr. Bender, the consultative psychologist who examined plaintiff in May 2022. *See* AR 38, 460-467. The ALJ noted that plaintiff had told Dr.

Bender "that she is able to prepare meals, drive a car, use public transportation, shop at stores, make change, and shower and dress independently." AR 38. The ALJ cited the activities that plaintiff reported to Dr. Bender when determining that plaintiff had only mild or no limitations in the areas of the "paragraph B" criteria.[1] *See id.*

At the RFC stage, the ALJ found plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms." AR 40. The ALJ cited no evidence of malingering. However, the ALJ went on to find plaintiff's testimony regarding the "intensity, persistence, and limiting effects" of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record . . . ." *Id.* Specifically, the ALJ found plaintiff's physical impairments and depression were belied by her daily activities:

> Despite these allegations, the claimant reported to Dr. Bender that she drives a car, prepares meals, goes shopping in stores, makes change, watches her grandkids, uses public transportation, showers and dresses independently, has no difficulty getting along with others, and has no problems maintaining a regular schedule. (Exhibit 4F, pgs. 3-4). She also testified that she lives alone. . . .

*Id.* The ALJ further found "the medical evidence of record fails to provide strong support for the claimant's allegations of disabling symptoms and limitations." AR 41. The ALJ cited various medical records in support of this finding. *See id.*

### C. Analysis

As plaintiff notes in her brief, the ALJ appears to have ignored plaintiff's hearing testimony regarding her physical and mental symptoms. At the RFC stage, the ALJ rejected plaintiff's

[1] A Social Security disability claimant will be found to meet Listing 12.04 if they meet the "paragraph A" criteria *and* either the "paragraph B" or "paragraph C" criteria. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, 12.04. Paragraph B states:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>
> 1. Understand, remember, or apply information (see 12.00E1).
> 2. Interact with others (see 12.00E2).
> 3. Concentrate, persist, or maintain pace (see 12.00E3).
> 4. Adapt or manage oneself (see 12.00E4).

*Id.*

symptom testimony without directly addressing the hearing testimony that would have undercut the RFC finding, such as her testimony that she could sit in a straight back chair for maybe 30 minutes at a time, that she could walk half a block, that she can stand in one place for about 15-20 minutes, and that three to four times a week she has chest pain that cannot be alleviated by her nitrous and that causes her to need to lie down and "sleep it off[.]" AR 67 75-76, 78. And at the step three finding, the ALJ repeatedly cited the daily activities that plaintiff reported to Dr. Bender in May 2022 without considering that plaintiff testified she no longer did some of these activities by the time of the June 2024 administrative hearing. *See* AR 39.

The level of functioning in her daily activities that plaintiff described at the hearing was more limited than what she reported to Dr. Bender two years earlier. Dr. Bender reported that plaintiff was able to drive, was "able to use public transportation (or facilitate a ride-share service) without supervision" and was "able to shop at the store independently." AR 462. At the hearing, however, plaintiff testified that she had let her driver's license lapse after it was revoked for a DUI and that she had not renewed it because "I feel that I have so much going on with my heart that it is not a good idea to drive." AR 71. Plaintiff's boyfriend had driven her to the hearing. AR 61. She also testified that she does not take public transportation but "get[s] rides" instead. AR 71. She testified, "I don't really do my shopping that much . . . because I can't – I don't know. I just – it makes me very uncomfortable when I'm there, so I'll like wait in my ride's car . . . and I will send them in there to get what I need . . . ." AR 73. The ALJ ignored this hearing testimony but relied on plaintiff's purported ability to drive, shop, and take public transit in assessing each of the "paragraph B" criteria at step three and in assigning plaintiff's RFC. AR 38, 39. The ALJ's inaccurate statement of plaintiff's daily activities, coupled with the failure to address plaintiff's hearing testimony, was error. And even if the ALJ had accurately stated plaintiff's daily activities, the ALJ would then have "had to connect [plaintiff's] activities to the conclusion that she could spend a substantial part of her day engaged in pursuits transferable to a work setting." *See Collard v. Bisignano*, No. 25-6334, --- F.4th ----, 2026 WL 2856741, at *3 (9th Cir. Sept. 23, 2026) (cleaned up) (citations omitted). The ALJ instead "merely listed a number of activities that [plaintiff] performs, while failing to acknowledge aspects of the daily activity evidence consistent with

United States District Court
Northern District of California

[plaintiff's] claim." *See id.* (cleaned up) (citations omitted). Given the extent to which the ALJ relied on plaintiff's purported activities throughout the decision, the Court cannot find the error was harmless.[2]

The Court further finds that the ALJ's references to plaintiff's ability to watch her grandkids does not provide a clear and convincing reason to reject plaintiff's symptom testimony. *See* AR 40, 44. The ALJ did not ask about this activity at the hearing but only cited to Dr. Bender's report. Dr. Bender reported, "When asked how claimant typically spends the day, claimant replied, 'I get up at noon, get dressed and sit on my bed until my kid comes by and I watch my grandkids. And then I'm back in my room. I eat maybe once a day.'" AR 462. On its face, this account does not appear indicative of skills transferrable to the work setting. At minimum, it was incumbent on the ALJ "to fully and fairly develop the record and to assure that the claimant's interests are considered" before using this reference to watching her grandkids as a reason to discount plaintiff's testimony. *See Smolen*, 80 F.3d at 1288 (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983))

In addition to citing plaintiff's daily activities, the ALJ rejected plaintiff's symptom testimony based on a purported conflict with the medical record. In the Ninth Circuit, the "clear and convincing reasons" standard "requires that the ALJ provide more than general findings, identify what testimony is not credible, and identify what evidence undermines that testimony." *Collard*, 2026 WL 2856741, at *2 (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)) (internal quotation marks omitted). "The ALJ must also state a rationale 'clear enough that it has the power to convince.'" *Id.* (quoting *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022)). Here, the ALJ found that plaintiff's "allegations are found to be not consistent with the objective medical evidence[,]" AR 41, and then went on to cite a selection of medical records and opinions. But the ALJ did not address plaintiff's highly relevant hearing testimony regarding her weekly debilitating chest pain, her limitations in her ability to sit/stand/walk, or her ability to be around people. As with the daily activities, the ALJ did not even cite plaintiff's hearing testimony, let alone grapple with it.

---

[2] The ALJ also misstated plaintiff as having told Dr. Bender that she "has no difficulty getting along with others," AR 40, when plaintiff actually told Dr. Bender that she stays away from crowds and "feel[s] inadequate to talk to" people. *See* AR 460. Plaintiff testified similarly at the hearing. *See* AR 72-73.

The Court finds this is cause for remand.

## II. Medical Opinions

Plaintiff also argues the ALJ erred by failing to properly assess the medical opinions of Dr. Bender and Dr. Payne-Gair.

### A. Legal Standard

For applications filed on or after March 27, 2017, such as here, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Under the revised regulations, 20 C.F.R. § 404.1502c, "an ALJ no longer needs to make specific findings regarding [the] relationship factors[.]"[3] *Woods*, 32 F.4th at 792. The most important factors, now, are: (1) supportability ("the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence"); and (2) consistency ("the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim"). *Id.* at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1), (2)) (internal alterations omitted). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* at 792. "The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source." *Id.* at 791 (citing 20 C.F.R. § 404.1520c(b) (internal quotation marks omitted)).

### B. Dr. Bender

On May 23, 2022, plaintiff was seen by consultative psychologist Dr. Mark Bender, Ph.D.,

[3] The relationship factors remain relevant "when assessing the persuasiveness of the source's opinion." *Woods*, 32 F.4th at 792. In assessing the relationship, the ALJ may consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and the specialization of the treating physician. 20 C.F.R. § 404.1520c(c).

for a mental evaluation at the request of the Department of Social Services. AR 460. Plaintiff complained of anger issues, not liking to leave her house, getting nervous about being in a car and about being around others. *Id.* Dr. Bender recorded that plaintiff was able to prepare meals, drive a vehicle, and use public transportation, was able to make change, shop, and shower and dress, and that she watches her grandkids. AR 462. He also recorded plaintiff as "Oriented x4" and that she had good speech, eye contact, senses, concentration, and calculation. *Id.* Dr. Bender noted plaintiff's attention and memory were mildly impaired and her abstraction and judgment were not intact. AR 462-463. He diagnosed her with moderate major depressive disorder and provisional PTSD. AR 465.

Dr. Bender assessed plaintiff as having the following limitations: no limitations in the ability to understand, remember, and perform simple/repetitive written and oral instructions; mild limitations in her ability to understand, remember, and perform complex/detailed written and oral instructions; and moderate limitations in her capacity to interact appropriately with others. AR 466. Dr. Bender further found plaintiff to have marked limitations in the following areas: ability to maintain concentration, attention, and persistence/consistency during a normal workday; ability to adapt to the usual stresses common to a competitive work environment including completing a normal workday or workweek and responding appropriately to changes in a work setting; ability to perform activities within a schedule and maintain regular attendance; and ability to complete a normal workday or workweek without interruptions resulting from a psychiatric condition. *Id.*

In assessing plaintiff's RFC, the ALJ found Dr. Bender's opinion "partially persuasive." AR 43. The ALJ found,

> Although the opinion of Dr. Bender is supported by his own examination of the claimant, which indicated depression, tiredness, anxiety, a restricted affect, mildly impaired attention and memory, and problems in crowds, but normal speech, cooperativeness, normal concentration, and good eye contact, his opinion is not consistent with the medical records, which support lesser limitations. (Exhibit 4F, pgs. 2, 4, & 5). Specifically, his opinion is inconsistent with medical records and mental status examinations demonstrating alertness, cooperativeness, a normal mood, a normal appearance, normal behavior, and normal thought content. (Exhibits 1F, pg. 9, 5F, pgs. 9 & 15, and 8F, pgs. 13 & 19).

*Id.*

United States District Court
Northern District of California

Plaintiff contends that the ALJ's treatment of Dr. Bender's opinion is not supported by substantial evidence in the record. Plaintiff notes that the ALJ found Dr. Bender's opinion was "supported" by his own examination of the plaintiff; but the only evidence the ALJ cited to discount Dr. Bender's opinion as "inconsistent" were excerpted treatment notes made during appointments for plaintiff's physical impairments.[4] Turning to the records the ALJ cited, Exhibit 1F, page 9, contains a reference to plaintiff's "normal mood and affect" during a physical exam conducted during a July 2021 hospital visit. *See* AR 355. Plaintiff had sought treatment for weakness and cough, diarrhea, and vaginal bleeding. AR 352. Exhibit 5F, pages 9 and 15, reference 2022 clinical visits to the endocrinology and otolaryngology offices, respectively. *See* AR 477, 483. The physical exam notes from these visits state that plaintiff was "alert and cooperative, and appears to be in no acute distress." AR 477, 483. Exhibit 8F, page 13, briefly references "Mood normal" in the context of a January 2024 office visit to explore possible heart surgery. *See* AR 570, 575. The Court agrees with plaintiff that it was error for the ALJ to discount Dr. Bender's opinion as "inconsistent" on the basis of passing references to a normal or alert mood in physical exams conducted in the context of medical appointments for physical ailments.

Of the records the ALJ cited, only Exhibit 8F, page 19, is a mental health record. Exhibit 8F, page 19, references "Mood normal[,]" "Behavior normal[,]" and "Thought content normal" during a February 2023 office visit for plaintiff to receive a refill of her Cymbalta prescription and to discuss disability paperwork. AR 580-581. The notes from that office visit show plaintiff was not assigned to a specific doctor.[5] The note further states that plaintiff's major depressive order was in full remission but then goes on to clarify: "Actually was in full remission but then ran out of Cymbalta a month ago, with apparent partial relapse." AR 582. Plaintiff's prescription was renewed. The Court finds that this reference to plaintiff's "normal" mood, behavior, and thought content, standing alone, is not a valid reason to discount Dr. Bender's opinion as inconsistent with

[4] Under the Social Security regulations, the most important factors for weighing a medical opinion are its supportability and consistency. *See Woods*, 32 F.4th at 791-92.

[5] The treatment note states that plaintiff's prior doctor was supposed to have completed the disability paperwork for plaintiff "but she moved without completing it." AR 580.

the medical evidence of record.

Had the ALJ credited Dr. Bender's opinion, this would have impacted the step-three analysis and the RFC finding. The Court finds the ALJ's error in the treatment of Dr. Bender's opinion was not harmless.

### C. Celine Payne-Gair

Plaintiff also challenges the ALJ's assessment of the opinion of Dr. Payne-Gair, Ph.D. On June 14, 2022, state agency psychology consultant Dr. Payne-Gair reviewed plaintiff's psychological records as part of plaintiff's disability claim at the initial level. AR 98. In conducting a psychiatric review of the "paragraph B" criteria for listings 12.04 (depressive disorders) and 12.06 (anxiety disorders), Dr. Payne-Gair opined that plaintiff had mild limitations in understanding, remembering or applying information, and moderate limitations in: interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. AR 97. She also reported that plaintiff's depressive, bipolar, and related disorders were severe. *Id.* Dr. Payne-Gair opined that plaintiff could "complete a normal workday and workweek w/o significant psychologically related interruptions," "adapt to routine change in the workplace," and "complete simple and detailed tasks." AR 106. Overall, Dr. Payne-Gair found that plaintiff had moderate limitations which do not prevent her from working. AR 98, 106. Plaintiff argues that the ALJ erred because, despite finding Dr. Payne-Gair's opinion "persuasive," AR 43, the ALJ did not incorporate Dr. Payne-Gair's assessed limitations into either the "paragraph B" criteria evaluation at step three or into the RFC.

Because the Court has concluded the ALJ erred in evaluating the symptom testimony of plaintiff and the opinion of Dr. Bender, and because those errors impacted the analyses at step three and at the RFC stage, the Court need not reach plaintiff's final argument regarding Dr. Payne-Gair specifically. The prior errors warrant remand for further administrative proceedings. Upon remand, the ALJ shall reevaluate plaintiff's symptom testimony and the opinion of Dr. Bender and shall re-visit the "paragraph B" criteria of step three (Listing 12.04). If needed, the ALJ shall then re-visit the subsequent steps in the disability inquiry. The ALJ may conduct a further administrative hearing

if helpful and may also revisit the treatment given to the opinion of Dr. Payne-Gair.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted in part. The Commissioner's motion is denied. This matter is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

Dated: September 28, 2026

SUSAN ILLSTON
United States District Judge